# EXHIBIT A

# EXHIBIT A

Matthew V. Parker (Plaintiff Pro Per)
530 E. McDowell Rd. #107-217
Phoenix, AZ 85004-1500
phone: 570-604-5686
e-mail: Matthew.V.Parker@gmail.com




OCT 27 2016
MICHAEL K. JEANES, CLERK
M. DE LA CRUZ
DEPUTY CLERK

IN THE SUPERIOR COURT OF ARIZONA

FOR THE COUNTY OF MARICOPA

| Matthew V. Parker, | CV2016-016744 |
|---|---|
| Plaintiff, | Case #CV2016- |
| v. | COMPLAINT |
| State of Arizona, and Mark Brnovich, Arizona Attorney General, in his official capacity, | |
| Defendants. | |

Plaintiff Matthew V. Parker (Pro Per) submits this Complaint for relief against the Defendants, (A) State of Arizona, and (B) Mark Brnovich, Arizona Attorney General in his official capacity, for his claims for relief for (1) discrimination in employment in violation of the Rehabilitation Act of 1973, 29 U.S.C. 794 and 794a, and (2) retaliation for assertion of rights under the Rehabilitation Act, 29 U.S.C. 794(d).

This Complaint is filed pursuant to Arizona Rules of Civil Procedure, Rules 3, 7(a), and 8(a).

## 1. The Parties, Claims, and Jurisdiction

1. The Plaintiff, Matthew V. Parker ("MVP"), was at all times material to this Complaint:

    (A) an adult resident of Maricopa County, Arizona; and

    (B) employed as a special agent (law enforcement officer); and

    (C) an "employee" of the State of Arizona Attorney General as that term is defined by 29 U.S.C. 794(d) and 42 U.S.C. 12111(4); and

    (D) a "qualified individual with a disability" as that term is used in 29 U.S.C. 794(a) and defined by 29 U.S.C. 794(d) and 42 U.S.C. 12111(8) and 42 U.S.C. 12102; and

    (E) a person with a "disability" as defined by 29 U.S.C. 794(d) and 42 U.S.C. 12102, to-wit: Posttraumatic Stress Syndrome, which disability was disclosed to his employer, the State of Arizona.

2. The Defendant State of Arizona (by the Arizona Attorney General), hereinafter referred to as "the State", was at all times material to this Complaint:

    (A) The "employer" of MVP as that term is defined in 29 U.S.C. 794(d) and 42 U.S.C. 12111(5)(A); and

    (B) Engaged in a "program or activity" as that term is defined and used in 29 U.S.C. 794(b)(3) because the Arizona Attorney General received and used, and continues to receive and use, federal financial assistance provided by the government of the United States for various federally funded programs and/or functions when it employed MVP, including, inter alia, funds from the United States Department of Agriculture Office of Inspector General to investigate food stamp benefits ("SNAP") fraud, and grants they received in

2014 and for $619,230 from the Executive Office of the President (Agency code 1127) through the Office of National Drug Control Policy for the "High Intensity Drug Trafficking Areas Program" (The Federal Award ID is: G14A0004A).

3. Defendant Mark Brnovich is the present Arizona Attorney General who would be empowered to provide whatever prospective injunctive relief the Court may grant for MVP based upon his claims herein. For that reason he is named as a Defendant in his official capacity.

4. MVP seeks relief herein for his claims against the Defendants for violation of the Rehabilitation Act of 1973, 29 U.S.C. 794, and 29 U.S.C. 794a (Discrimination and Retaliation, Counts One and Two). He seeks damages in excess of $50,000.00 plus injunctive relief.

5. All events alleged herein occurred within Maricopa County, Arizona.

6. Based upon the foregoing, the Superior Court for Maricopa County has both personal and subject matter jurisdiction for MVP's two claims for relief herein. [See *Madden-Tyler v. Maricopa County*, 189 Ariz. 462, 466-467, 943 P. 2d 822, 826-827 (App., 1997) (rev. den., 1997).]

## 2. Additional Fact Allegations in Support of Counts One and Two

7. MVP was employed by the State of Arizona, specifically by the Arizona Attorney General, as a "special agent", a law enforcement investigator position, from January 21, 2014 until April 8, 2015 when the State terminated his employment.

8. Prior to commencing his employment with the State, MVP had earned a bachelors degree in justice studies from Arizona State University, had eight years of law enforcement experience, and was AZ POST certified.

9. On January 21, 2014, the Arizona Attorney General's ("AAG") office executed a search warrant at the premises of Biological Resource Center of Arizona ("BRCA") in Maricopa County, Arizona based upon information that human remains were being unlawfully kept and used on its premises in violation of Arizona law.

10. AAG special agents found evidence of numerous violations of Arizona law on the premises, primarily almost 2,000 complete and partial cadavers and body parts in various states.

11. MVP was assigned to work on the BRCA case which meant that he had to spend hours at the BRCA site, inventorying corpses and body parts, cataloging evidence, and contacting relatives of decedents, mortuaries and cemeteries, and viewing many gruesome scenes and videos and photographs, and going to storage freezers where the bodies and body parts were kept as evidence, not unlike the task of examining the death pits of a Nazi concentration camp.

12. The BRCA assignment became so stressful and unpleasant that MVP started experiencing symptoms that lead him to seek mental health treatment in August, 2014 when he began treatment by Loraine Kern, M.A., LPC, of Brilliant Sky Counselling, PLLC. In October, 2014, she diagnosed MVP as suffering from posttraumatic stress disorder ("PTSD") as defined by the DSM-V. Ms. Kern told MVP that this disorder was caused by his gruesome job assignment of dealing with corpses, body parts, and distressed

relatives of decedents, and that he should request a transfer to a different job assignment to avoid aggravating his PTSD.

13. This diagnosis of PTSD was later confirmed by David Leicken, M.D., a psychiatrist who had examined MVP, in a report dated December 11, 2014.

14. Based upon his PTSD suffering and at the direction of Ms. Kern, on October 27, 2014, MVP met with his supervisor, Chief Special Agent Andy Rubalcava and told him of his PTSD diagnosis and the source of the disorder, explained that the work was making him ill, and requested a transfer from the BRCA investigation as a reasonable accommodation for his disability (PTSD). Rubalcava refused his request, saying that he would not be removed from the BRCA investigation because he was so deeply involved with it and it would be too much trouble to assign a different agent to the case. Rubalcava further told MVP to report his diagnosis and request to Charles Loftus, his Asst. Chief Special Agent.

15. On October 28, 2104, MVP filed a workers compensation report with the AAG, based upon his PTSD.

16. On October 29, 2014, as directed by Rubalcava, MVP reported his diagnosis and request to Mr. Loftus, who told MVP to report the matters to the AAG Human Resources Dept., which MVP did. Mr. Loftus offered no help or solution to MVP's disability accommodation request.

17. The State refused to provide any accommodation for MVP's work-caused PTSD, and would not engage in an interactive process to find some accommodation. MVP was thus compelled to continue working on the BRCA investigation without any relief and his PTSD symptoms got worse.

5

18. Rather than trying to accommodate MVP's PTSD, the State instead engaged in the following series of retaliatory acts against MVP after he had disclosed his PTSD and requested a reasonable accommodation for it:

(A) Mr. Loftus hyper-scrutinized MVP and became unreasonably critical of him.

(B) When MVP inquired about the status of his workers comp report that he had filed with the AAG on October, 27, 2014 a month later, he was told that "it had been lost" and he then had to file a new claim or report on December 1, 2014.

(C) In December, 2014, MVP was told by Dr. Leicken that his PTSD made it imperative that he be transferred from the BRCA investigation but since his request had been refused, he should seek short-term disability or FMLA leave of up to twelve weeks to try to recover and get further treatment. Based upon that medical advice, MVP contacted AAG Human Resources and asked to take FMLA leave. He was first told that he was ineligible for FMLA leave but then told he might qualify. He was first directed to report to Mr. Loftus whose reaction to MVP's leave request was hostile. He told MVP to write a memo detailing his direct encounters with corpses and body parts, took the keys to the AAG car back that had been assigned for MVP's use, and his service pistol. He was told he would have to use his personal leave time benefit while out on leave. Mr. Loftus acted as if MVP had no PTSD and again offered no accommodation. December 12, 2014 was the last day that MVP was physically working at his job with the AAG prior to commencing his leave.

(D) On January 20, 2015, MVP returned to his office to retrieve some of his personal property. He discovered that his access to the AAG building had been revoked although he was still an AAG employee. When he contacted Mr. Rubalcava to inquire as to why his access had been revoked and how he could get to his property, Mr. Rubalcava's response was that he (MVP) was now "someone else's problem", that he believed that MVP had provided false information about being disabled, and that he would not help him get access to his personal property.

(E) Soon thereafter, MVP learned that his AAG e-mail usage was blocked. When he inquired as to why it was blocked while he was still employed, he was told that it was a new policy to block e-mail access to employees out on leave. MVP later learned that this was a lie and there was no such policy.

(F) Mr. Loftus made false statements in response to MVP's workers comp application in an effort to prevent MVP from receiving workers comp benefits that he was entitled to receive.

(G) The State fired MVP on April 8, 2015, falsely stating that he had "abandoned" his job, while he was still out on approved leave.

(H) Mr. Rubalcava and AAG employee Autumyn Maya, acting on behalf of the AAG, filed a complaint with AZ POST in May, 2015, making false allegations against MVP in an effort to cause him to lose his peace officer certification. AZ POST then commenced disciplinary proceedings against MVP which are still pending, causing MVP great stress, harm to his reputation, and legal expenses.

18. The State conduct towards MVP described herein meets the definition of "discriminate" in 29 U.S.C. 794(d) and 42 U.S.C. 12112(b) and/or "retaliation" in 29 U.S.C. 794(d).

19. As the direct and proximate result of such discrimination and retaliation by the State, MVP has suffered damages including lost income and a reduced standard of living, lost promotional opportunities, harm to his personal and professional reputation, emotional distress, loss of sleep, worry about his future employment prospects, he may have difficulty in finding new employment because he has to disclose that he was fired from his last job (with the State), and health care expenses that would not have occurred if the State had not discriminated and retaliated against him.

### 3. Verification by Plaintiff

Pursuant to A.R.S. 12-1803 and A.R.S. Rules of Civil Procedure, Rule 80(i), I declare and state under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of October, 2016.

*/s/ Matthew V. Parker*
Matthew V. Parker, Plaintiff

### 4. Demand for Jury Trial

If this action is removed to the United States District Court, Plaintiff MVP demands a trial by jury pursuant to the Seventh Amendment to the United States Constitution, 29 U.S.C. 794a, and Federal Rules of Civil Procedure Rule 38(a, b).

### 5. Relief Requested

Based upon the foregoing, Plaintiff MVP requests judgment and orders granting the following relief against Defendants, **except that the only** relief sought against Defendant Arizona Attorney General Mark Brnovich is prospective injunctive relief:

### Count One: Rehabilitation Act (29 U.S.C. 29 U.S.C. 794, 794a): Failure to Accommodate Employee with Disability

1. Compensatory damages, including, inter alia, lost past and future income damages, emotional distress damages, and other general tort damages.

2. Injunctive relief, as provided for by 29 U.S.C. 794a(a)2.

3. Reasonable attorneys' fees incurred herein, pursuant to 29 U.S.C. 794a (b) and A.R.S. Rules of Civil Procedure, Rule 54(g).

4. Taxable costs incurred herein, pursuant to A.R.S. 12-341 and A.R.S. Rules of Civil Procedure, Rule 54(f).

### Count Two: Retaliation for Assertion of Rights Under the Rehabilitation Act, 29 U.S.C. 794(a & d)

1. Compensatory damages, including, inter alia, lost past and future income damages, emotional distress damages, and other general tort damages.

2. Injunctive relief, as provided for by 29 U.S.C. 794a(a)2.

3. Reasonable attorneys' fees incurred herein, pursuant to 29 U.S.C. 794a (b) and A.R.S. Rules of Civil Procedure, Rule 54(g).

4. Taxable costs incurred herein, pursuant to A.R.S. 12-341 and A.R.S. Rules of Civil Procedure, Rule 54(f).

Respectfully submitted this 27th day of October, 2016.

*/s/ Matthew V. Parker*
Matthew V. Parker, Plaintiff