Aaron S. Ludwig (AZ Bar No. 18841)
LUDWIG LAW OFFICES, LTD.
4242 N. 19th Ave., Ste. 150
Phoenix, AZ 85015-5108
LudwigLawOffices@gmail.com
602-882-5417

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Matthew V. Parker**, <br><br>  Plaintiff, <br><br> vs. <br><br> **State of Arizona,** and **Mark Brnovich, Arizona Attorney General,** in his official capacity, <br><br>  Defendants. | Case No. 2:17 CV 887-PHX-DWL <br><br> **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> (responding to dkt. #117) |

Plaintiff Matthew V. Parker, by and through Aaron S. Ludwig, Ludwig Law Offices, Ltd., his undersigned attorney of record, submits this Response to the Defendants' Motion for Summary Judgment (dkt. #117).  Concurrently with this Response, the Plaintiff is filing his  "Plaintiff's (1) Response to Defendants' Statement of Facts, and (2) Statement of Additional Facts, in Opposition to Defendants' Motion for Summary Judgment", pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 56(c) and U.S. District Court for Arizona LRCiv 56.1(a



& b). That separately filed Response includes objections and motions to strike portions of the Defendants' Statement of Facts **(in bold blue font)** pursuant to LRCiv. Rule 7.2(m)(2), which are set out in Section 2 of that Response, infra. Section 3 of that Response is the Declaration of Plaintiff Parker, and references to the paragraphs of his Declaration are cited as "Parker Decl. Parag. __".

All paragraphs cited below referring to the "DSOF" are referring to the Defendants' Statement of Material Facts in Support of the Motion for Summary Judgment, dkt. #118.

## 1. Summary Judgment Standards

In FRCP Rule 56 summary judgment proceedings, the Court must view the relevant facts presented in the light most favorable to plaintiff, which means that the Court must believe plaintiff's evidence, including his testimony, and must draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). *Bodett v. CoxCom, Inc.*, 366 F. 3d 736, 742 (9th Cir. 2004).

In *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1112 (9th Cir., 2004), the Court stated:

> "In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses."

In *Nigro v. Sears, Roebuck and Co.,* 784 F. 3d 495, 499 (9th Cir., 2015), the Ninth Circuit said:

> "We have previously held in several cases that it should not take much for plaintiff in a discrimination case to overcome a summary judgment motion.



. . . . . . . . . . . . . . . . . .

"This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record."

The Defendants' Motion for Summary Judgment ("DMSJ") is based upon the 70 numbered paragraphs in the DSOF, most of which have been denied and disputed. Those disputes which are over facts material to whether the Defendants are entitled to summary judgment present issues to be resolved by the trier-of-fact and preclude summary judgment for the Defendants. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. at 133, 149-151 (2000).

## 2. Summary of Material Facts- Evidence Presented by Plaintiff Parker

Plaintiff Parker was employed by the Defendants (Arizona Attorney General or "AGO") as a special agent (AZ POST certified law enforcement officer) from January 21, 2014 until his employment was terminated by the Defendants on April 8, 2015. Prior to commencing his employment with the State, Parker had earned a bachelor's degree in justice studies from Arizona State University and had eight years of law enforcement experience. Response to Statement of Facts (filed concurrently with this Response), Sec. 3, Parker Declaration (hereinafter "Parker Declaration"), paragraphs 4 and 5. His supporting citations to the record are provided in the separately filed Response to the DSOF, but most of the 28 paragraphs in his Declaration are supported solely by his Declaration based upon his personal knowledge, observations, and experience. Parker Declaration paragraph 3.

### Cause of PTSD - BRCA Case – processing and handling a mass of scattered and cut-up human body parts and fluids

On January 21, 2014, the Arizona Attorney General's ("AGO") office executed a search warrant at the premises of Biological Resource Center of Arizona ("BRCA") in Maricopa County, Arizona based upon information that human remains were being unlawfully kept and used on its premises in violation of Arizona law. The AGO and the FBI effectively seized the BRCA premises and the execution of the search warrant and the confiscation and preservation of evidence continued over the course of several days. Parker Declaration paragraph 8.

Parker was assigned to work on the BRCA case on January 22, 2014 which meant that he had to spend hours at the BRCA sites, inventorying corpses and body parts, cataloging evidence, and contacting relatives of decedents, mortuaries and cemeteries, and viewing many gruesome scenes and videos and photographs, and going to storage freezers where the bodies and body parts were kept as evidence, not unlike the task of examining the death pits of a Nazi concentration camp. [See 28 infra.] Parker Declaration paragraph 9.

AGO special agents including Parker found evidence of numerous violations of Arizona law on the premises, primarily almost 2,000 complete and partial cadavers and body parts in various conditions. Parker Declaration paragraph 10.

Reuters published its news report documenting the AGO investigation at BRCA and the horrific things found there which Parker had observed and processed when he was assigned to that case when and after the search warrant was executed which included an interview with Parker and his photo. That report is EX. 134. Parker Declaration paragraph 28.

### Diagnosis of work caused disability - PTSD

The BRCA investigation assignment became so stressful and unpleasant that Parker started experiencing symptoms that lead him to seek mental health treatment


**4242 N. 19th Ave.**
**Suite 150**
**Phoenix, AZ 85015**
**(602) 882-5417**

in August, 2014 when he began treatment by Loraine Kern, M.A., LPC. In October, 2014, she diagnosed him as suffering from posttraumatic stress disorder ("PTSD") as defined by the DSM-V. Ms. Kern told Parker that this disorder was caused by his gruesome job assignment of dealing with corpses, body parts, and distressed relatives of decedents, and that told him that he should request a transfer to a different job assignment to avoid aggravating his PTSD. Parker Declaration paragraph 11. This diagnosis of PTSD was soon confirmed by David Leicken, M.D., a psychiatrist who had examined me, in a two-page report dated December 11, 2014. Parker Declaration paragraph 12.

### Parker reported his PTSD and requested an accommodation (transfer)

Based upon his PTSD suffering and at the direction of Ms. Kern, on October 27, 2014, Parker told his supervisor, Chief Special Agent Andy Rubalcava, about his PTSD diagnosis and the source of the disorder (the gory and gruesome BRC evidence), explaining that the work was making him ill, and he requested a transfer from the BRCA investigation as a reasonable accommodation for his just diagnosed disability (PTSD). Mr. Rubalcava refused Parker's request, telling him that he would not be removed from the BRCA investigation because he was so "deeply involved with it" and it would be too much trouble to assign a different agent to the case. Mr. Rubalcava told Parker to report his diagnosis and request to Charles Loftus, his Asst. Chief Special Agent. (Mr. Loftus was not in the AGO office at that time, so Parker reported the same information and transfer request to Loftus when he next saw him one day later, on October 28. Parker Declaration paragraph 13.)

On October 28, 2014, Parker met with AGO Human Resources official Kay Gee to submit a workers compensation report based upon his job-caused PTSD and need to transfer away from the BRCA assignment. Parker Declaration paragraph 14.



LUDWIG LAW OFFICES, LTD
4242 N. 19th Ave.
Suite 150
Phoenix, AZ 85015
(602) 882-5417

That same day, as directed by Rubalcava, Parker reported his PTSD diagnosis and request to be transferred from the BRCA investigation to Mr. Loftus, who told him to report the matters to the AGO Human Resources Dept., which he had already done. Mr. Loftus' response to Parker was hostile and openly skeptical of his report of PTSD and he refused to consider the requested transfer, and saying it was a matter for AGO HR to deal with, although HR could not give Parker the transfer requested as an accommodation; only Rubalcava or Loftus could do transfer Parker off of the BRC case. Parker Declaration paragraph 15.

Despite Parker's three separate PTSD notifications and requests to transfer from the BRCA investigation on October 27 and 28 supra, the Defendants refused to engage in any process to accommodate his work-caused PTSD, despite the fact that they had many other special agents who could have taken easily taken Parker's place on the BRCA case if he was transferred away from it. Parker was thus compelled to continue working on the BRCA investigation without any relief and his PTSD symptoms got worse. Parker Declaration paragraph 16.

### Defendants' Acts of Retaliation

Rather than trying to accommodate Parker's PTSD, the Defendants instead engaged in the following series of retaliatory acts against him after he had reported his PTSD diagnosis and requested a reasonable accommodation (transfer from BRCS case) for it on October 27 and 28 in 2014 (set forth in Parker Declaration paragraph 18).

(A) Mr. Loftus hyper-scrutinized Parker's work and became unreasonably critical of him, which was 180 degrees from his supervision of Parker prior to being told of his PTSD and request for a transfer from the BRCA.

(B) A month after Parker inquired about the status of his workers compensation report that he had filed with the AGO on October 28 2014, he was



told by AHO Human Resources that "it had been lost" and so he then had to file a new claim or report on December 1, 2014.  No explanation was ever provided to him as to how or why his claim had gotten "lost" after he had submitted it.

(C) In December, 2014, Parker was told by psychiatrist Dr. Leicken that his PTSD made it imperative that he be transferred from the BRCA investigation but since his requests on October 27 and 28 had been refused or ignored, that Parker should seek short-term disability or FMLA leave of up to twelve weeks to try to recover and get further PTSD treatment.  Based upon that medical advice, Parker contacted AGO Human Resources and asked to take FMLA leave. He was first told that he was ineligible for FMLA leave but then later told that he might qualify and was told to make the request to Mr. Loftus whose reaction to his FMLA leave request was hostile, consistent with his hostility to Parker after he had reported his PTSD and transfer request.  Mr. Loftus directed Parker to write a memo detailing his direct encounters with corpses and body parts, took from him the keys to the AGO car that had been assigned for his use, and took his AGO service pistol.  Mr. Loftus reacted as if Parker had no PTSD and no need to take any leave, and again offered no accommodation or effort to find any accommodation for him.

December 12, 2014 was the last day that Parker was physically working at his job with the AGO prior to commencing his FMLA leave and then subsequent termination of employment.

(D)  On January 20, 2015, Parker went to his office at the AGO to retrieve some of his personal property but discovered that his access to the AGO building had been revoked although he was still an AGO employee. When Parker contacted Mr. Rubalcava to inquire as to why his access had been revoked and how he could get access to his personal property, in his office, Mr. Rubalcava's response was that Parker was now "someone else's problem", that he believed that Parker had provided



false information about being disabled, and that he would not help him get access to his personal property.

(E) Soon thereafter, Parker learned that his AGO e-mail usage had been blocked. When Parker inquired as to why it was blocked while he was still employed, he was told that it was a new policy to block e-mail access to employees out on leave.

Parker later learned that this was a not true and there was no such policy. The conduct of the Defendants in preventing him from accessing his AGO e-mail account and entering the AGO offices while he was still employed was not done pursuant to any established rule or policy for employees on FMLA leave, and other AGO employees on FMLA leave, including a pregnant Assistant Attorney General did not have their building or e-mail access denied while on FMLA leave.

(F) The State fired Parker on April 8, 2015, falsely stating that he had "abandoned" his job. In fact, Parker was still out on approved leave from the AGO and his application for a medical retirement filed with the AGO Local Board (pursuant to A.R.S. 38-847) was then pending an adjudication by the Local Board.

(G) Mr. Rubalcava and AGO employee Autumyn Maya, acting on behalf of the Defendants, filed a complaint with AZ POST in May, 2015, making false allegations against Parker in an effort to cause the revocation or suspension of his Arizona police officer certification. AZ POST then commenced disciplinary proceedings against him. Eventually AZPOST determined that there was no cause to pursue any disciplinary or licensing investigation and it dismissed the matter altogether. This false charge submitted to AZPOST by the Defendants caused Parker stress, harm to my reputation, and legal expenses. Also, see Parker's Responses to DSOFs 52 through 57.

(H) The Defendants inexcusably and without justification caused the AGO Local Board to unreasonably delay the adjudication/decision on Parker's application



LUDWIG LAW OFFICES, LTD.
4242 N. 19th Ave.
Suite 150
Phoenix, AZ 85015
(602) 882-5417

for medical/disability retirement.  The AGO Local Board took  27 months to adjudicate his claim, although the State/AGO did not actively oppose it. The normal time period for the Local Board to process and adjudicate a claim for a medical or disability benefits is six to nine months.  The Local Board did not refer Parker for an Independent Medical Examination (IME) until 10 months after his application had been submitted to it.

The Defendants falsely reported to the Local Board and Parker that Maricopa County Superior Court case records in the BRCA felony case had been was sealed which caused an unnecessary delay in obtaining some records that were needed by Parker's designated IME doctor, causing a long and totally unnecessary delay in adjudicating his application to the Local Board.

Parker Declaration paragraph 18.

### **Medical retirement was granted based upon work-caused PTSD by the AGO Local Board  (the state agency established by statute to adjudicate claims for AGO employee medical retirements)**

Parker applied for a medical disability retirement from the AGO pursuant to A.R.S. 38-841 et seq. on February 20, 2015. Parker Declaration paragraph 19. Pursuant to A.R.S. 38-847, his application was adjudicated by the Arizona Public Safety Personnel Retirement System Local Board ("the AGO Local Board") which ultimately voted to approve his application and made findings accordingly pursuant to A.R.S. 38-847(D). Parker Declaration paragraph 20.  See dkt. 120, Ex. 5, wherein the Board made findings, inter alia, including the findings numbered 1, 2, 3, and 5 listed in Sec. 3 infra.

No appeal has been taken from the Board decision supra, and the  decision has become became final is now in full force and effect.  The deadline for an appeal [pursuant to A.R.S. 380-847(J)] has long passed.  Parker Declaration paragraph 21.



Note #1: A party had the right to appeal the Local Board decision ("judicial review") pursuant to A.R.S. 38-847(D)(3)(last sentence), but the Board decision has not been appealed and the time for an appeal has expired, supra.

Note #2: Parker recognizes that the Defendants may be entitled to an offset from damages that he may recover in this action based upon benefits he receives from the State pursuant to the decision of the PSPRS Local Board.

Parker is still receiving disability retirement benefits pursuant to the Board decision. Parker Declaration paragraph 22.

Although Parker did apply for workers compensation benefits as a result of his job-related PTSD, he has never received any workers compensation benefits, and his workers compensation application has been stayed at the ICA pending the disposition of this action. Parker Declaration paragraph 24, and Exhibits 104-107.

### 3. Four Material Facts Have Already Been Proven in prior State Administrative Proceedings and are Issue Preclusion in this Action

Concurrently with the DMSJ, Plaintiff Parker filed his "Plaintiff's Motion for Partial Summary Judgment" based upon the final administrative agency decision of the Attorney General's Office Local Board which voted to grant Parker's application for medical retirement and associated benefits, which has not been appealed. See dkt. # 119, 120, 130, 131and 136. That decision included specific agency findings which are directly relevant certain issues raised in the DMSJ. Based upon those findings, issue preclusion compels findings that:

"1. Parker had a disability as defined under the Rehabilitation Act, to-wit: PTSD.

2. Parker's disability was the result of on the job occurrences while employed by the AGO.

3. Parker is now unable to work because of his disability and has been

unable to work since at least June, 2017 when his disability retirement application was approved by the Board.

. . . . . . . . .

5.  Parker was not terminated by the AGO for a disciplinary reason.
Reply re Plaintiff's Motion for Partial Summary Judgment, dkt. #136, Sec. 3, pgs. 6-8

Where the parties file cross-motions for partial summary judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered. *Las Vegas Sands, LLC v. Nehme*, 632 F. 3d 526, 532 (9th Cir., 2001).

As set forth in the Plaintiff's Motion for Partial Summary Judgment, dkt. #119, 120, and 136, the decision and findings of the AGO Board Local on these same fact issues as are presented in the instant summary judgment proceedings are now entitled to collateral estoppel/issue preclusion effect, citing, inter alia, *Hernandez v. Gemini Hospice LLC*, 2017 WL 1318036, 3-4, case # 2:16 CV 1486 PHX GMS (D. Ariz., April 10, 2017), *Miller v. County of Santa Cruz,* 39 F. 3d 1030, 1032-1033 (9th Cir., 1994), and *Casillas v. Arizona Dept. of Economic Security*, 153 Ariz. 579, 739 P. 2d 800 (App., 1986).

Since the AGO Local Board was an agency within the AGO, and a State agency, its findings and decisions are also admissions by the Defendants in this action. Fed Rules Evid Rule 801(d)(2).

The Defendants have argued that issue preclusion is inapplicable because there was no "privity" among the parties involved in the Local Board proceedings (Parker, Local Board 100, and the AGO), but given who the Defendants are in this action (the State and the Attorney General), the privity requirement is satisfied.  In *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Authority*, 322 F. 3d 1064, 1081-1082 (9th Cir., 2003),  the Ninth Circuit stated:



4242 N. 19th Ave.
Suite 150
Phoenix, AZ 85015
(602) 882-5417

> "Even when the parties are not identical, privity may exist if "there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest." *In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir.1983) (citation omitted); *see also Stratosphere Litigation,* 298 F.3d at 1142 n. 3 (finding privity when a party is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved") (citation omitted); *Shaw v. Hahn,* 56 F.3d 1128, 1131–32 (9th Cir.1995) (finding privity when the interests of the party in the subsequent action were shared with and adequately represented by the party in the former action);
>
> . . . . . . . . . .
>
> Finally, a relationship of privity can be said to exist when there is an "express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues."
>
> . . . . . . . . . . . .
>
> *Alpert's Newspaper Delivery Inc. v. N.Y. Times Co.,* 876 F.2d 266, 270 (2d Cir.1989) ("The issue is one of substance rather than the names in the caption of the case; the inquiry is not limited to a traditional privity analysis."); *ITT Rayonier,* 627 F.2d at 1003 ("Courts are no longer bound by rigid definitions of parties or their privies for purposes of applying collateral estoppel or res judicata.").

The argument that there is no privity the parties are two related Arizona state agencies (the proverbial "right hand and left hand") has been expressly rejected by this Court in *Houston v. Arizona State Board of Education*, 2013 WL 12116366 (section II-C of Order), D. Ariz., 2013 (case #2: 13 CV PHX SRB, filed March 21, 2013).

### 4. Additional Material Facts Have Been Admitted in the Defendants

On June 22, 2017, the Parties filed their "Amended Rule 26 Joint Proposed Discovery Plan", dkt. #22. In the <u>Defendants' section</u> of Part 2 of the Plan, the <u>Defendants made</u> the following <u>judicial admissions</u>:

> "One of Plaintiff's assignments with the AGO involved investigation



- 12 -

of a body donation company called Biological Resource Center ("BRC"). On January 22, 2014 the AG's Office, in conjunction with the Federal Bureau of Investigation, raided BRC following reports that the company had mishandled human remains donated for scientific research. Biological samples consisting of human remains were seized from BRC and initially sent to several Phoenix-area mortuaries for cremation. . . . . . . . . .

**Over the course of two weeks Plaintiff and a handful of other Agents from the AG's Office received the remains in body bags** from various funeral homes and oversaw transfer of the body bags into freezer storage. Though funeral home employees did most of the work, Plaintiff at times assisted with moving body bags containing various human remains into the storage facilities. Throughout his tenure with the AG's Office Plaintiff performed other tasks associated with the investigation, including sporadic checks of the freezers to ensure they remained functional and contacting decedents' next of kin.

. . . . . . . . . . **Plaintiff received a PTSD diagnosis from a private practitioner on or around October 2014, and relayed this information to Defendants for the first time on October 28, 2014**."

(emphasis added)

Dkt. #22, pgs. 3-4.

In *American Title Insurance Co. v. Lacelaw Corp*., 861 F. 2d 224, 226 (9th Cir., 1988), the Ninth Circuit stated:

"For purposes of summary judgment, the courts have treated representations of counsel in a brief as admissions even though not contained in a pleading or affidavit. *United States v. One Heckler-Koch Rifle,* 629 F.2d 1250, 1253 (7th Cir.1980); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2723, pp. 64-66 (1983) (admissions in opponent's brief can be used to determine there is no genuine issue of fact, since they are functionally equivalent to "admissions on file")."

### 5. Responses to DMSJ Section III (B-E) Arguments:

### B. Workers Compensation is not Parker's Exclusive Remedy

In Section III-B, the Defendants argue that Parker's two claims under the



4242 N. 19th Ave.
Suite 150
Phoenix, AZ 85015
(602) 882-5417

federal Rehabilitation Act are barred because Arizona's workers compensation laws are his exclusive remedies for injuries suffered during his employment. This argument is groundless and not made in good faith because state laws cannot abrogate or limit federal statutory rights unless expressly provided by the latter. State workers compensation statutes which provide that such laws are the exclusive remedies for covered workers cannot preclude rights and remedies under federal statutes, such as the Rehabilitation Act. *Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638 (1990). *Wood v. County of Alameda*, 875 F. Supp. 659 (N.D. Cal., 1995).

It is undisputed that Parker has not received any workers compensation benefits and that his application for such benefits has been suspended pending the outcome of this case. If he prevails in this action with respect to the relief he is seeking, he will dismiss or modify his workers compensation claim to avoid any double recovery.

### C. There is substantial evidence that the Defendants failed to provide an accommodation for Parker's PTSD or engage in any interactive process to find one.

The first sentence of this Defendants' argument sums it up: "Plaintiff . . . simply did not request any disability accommodations that were not granted.

First and most important, the Plaintiff asked for a disability accommodation (transfer from the BRCA case) three times but his requests were denied without any interactive process. Pg. 5, line 11 through pg. 6, line 16 supra.

Second, most of the DSOFs cited by the Defendants in support of this argument have been disputed by Parker in his concurrently filed Response to the DSOF.

### D. There is evidence that the Defendants retaliated against Parker by eight (A through H) adverse employment actions.



An employee's report of his disability or his request for an accommodation for the disability (a protected act) is the first of the three elements of proof for a claim (a protected act) under the Rehabilitation Act prohibition against retaliation. *Coons v. Secretary of U.S. Dept. of Treasury*, 383. F. 3d, 879, 887 (9th Cir., 2004). The facts establishing this first element are set forth in Section 2 supra at pgs. 5-6. The second and third elements of this claim are (2) an adverse employment action, and (3) a causal connection between the first and second element. *Coons* supra.

Parker suffered eight acts of retaliation, listed (A) through (H), Sec. 2 supra, at pgs. 6-9, and provides supporting evidence for each. In its Motion, the Defendants offer some evidence that creates some fact disputes as to some of the eight, but no evidence proving that any of the eight did not occur as a matter of law. The Defendants also argue that none of the eight actions individually rise to the level of an adverse employment action (element #2 supra) under the standards or definition set by *Ray v. Henderson*, 217 F. 3d 1234 (9th Cir., 2000), but even if, arguendo that were true as a matter of law, Parker has combined the eight into a single retaliation claim. In *Thomas v. County of Riverside,* 763 F. 3d 1167, 1169 (9th Cir., 2014), the Court observed:

> "Adverse employment actions that are so trivial as to be legally insufficient "include only minor acts, such as 'bad-mouthing,' that cannot reasonably be expected to deter protected speech." *Coszalter,* 320 F.3d at 976. . . . . . . . Moreover, as we have stated, "[d]epending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights." *Coszalter,* 320 F.3d at 975. And here there was evidence suggesting that some of these actions were taken as part of a more general campaign and hence might in context have greater materiality than when viewed in isolation. Thus, at a minimum, this case must be remanded so that the district court can evaluate on a more detailed basis the incidents that it dismissed collectively as "petty workplace gripes."



With respect to the Defendants' causing unnecessary delay in processing my medical retirement application [retaliation act (H), pgs. 8-9 supra], such delay standing alone is an act of retaliation (element #2).  See *Fonseca v. Sysco Food Services of Arizona, Inc.,*  374 F. 3d 840, 847 (9th Cir., 2004), which cites *University of Hawai'i Prof'l Assembly v. Cayetano,* 183 F.3d 1096, 1105–06 (9th Cir., 1999) (holding that receiving pay even a couple of days late can seriously affect an employee's financial situation and constitutes substantial impairment).

As to the third element, causal connection, the Defendants make no argument. All eight incidents occurred within six months of Parker's protected acts on October 27 and 28 of 2014, so causal connection may be inferred.  The Ninth Circuit has held that "[d]epending on the circumstances, **three to eight months is easily within a time range that can support an inference of retaliation."** *Coszalter v. City of Salem,* 320 F.3d 968, 977–78 (9th Cir., 2003). In *Diederich v. Providence Health & Services,* 622 Fed. Appx. 613, 2015 WL 4638253 (9th Cir., 2015), there were multiple acts of retaliation over a period of seven months between the protected activity and the termination, the same as in the instant case. The Court said:

> "There was sufficient evidence of retaliation even though there were seven months between the employer's knowledge of protected act and the termination because there were adverse employment actions during that seven month interval which culminated in the termination: "The evidence in the record shows that a series of adverse actions against Diederich began in January 2008, culminating in his termination in September 2008."

The causal connection may also be inferred by the Defendants hostile reactions to Parker's disability report and transfer request. *Waters v. Churchill*, 511 U.S. 661, 681-682 (1994). *Kasbarian v. Equinox Holdings, Inc.,* ___Fed. Appx.___, 2018 WL 3099489 (9th Cir., 2018). *Bagley v. Bel-Aire Mechanical Incorporated*, 647 Fed. Appx. 797, 2016 WL 1393428 (9th Cir., 2016). *Tamosaitis v. URS Inc.*, 781 F. 3d 468, 481-482 (9th Cir., (2015).

The Defendants argue that their unsubstantiated (and eventually dismissed) report to AZ POST was privileged pursuant A.R.S. 41-1821.01(C) which states (with respect to reports to AZ POST):

> "C. Civil liability may not be imposed on either a law enforcement agency or the board for providing information specified in subsections A and B of this section if there exists a good faith belief that the information is accurate."

First, a state statute cannot abrogate or limit rights under federal employment discrimination statutes. *Adams Fruit Co., Inc. v. Barrett*, supra. *Wood v. County of Alameda*, supra. Second, there is evidence that the Defendants did **not** have a good faith belief that the information was accurate. Response to DSOFs 52 through 59, and (G) at page 8 supra.

### E. There is no factual basis for a defense of after acquired evidence.

The Defendants correctly set forth the applicable law on this defense at pg. 17, lines 2-10 of their Motion.

The Defendants "facts" in support of this defense are set forth in DSOFs 52 through 59. However:

(1) the Defendants concede in DSOF 57 that their allegations of misconduct or misrepresentation were dismissed by AZ POST; and

(2) Parker presents compelling evidence in his Responses to those DSOFs 52 through 59 to prove that he engaged in no such misrepresentation or misconduct as alleged by the Defendants and the Defendants had no "good faith" reason to believe otherwise particularly when their information came form an unknown source whose credibility was unknown. Dkt. #137, pgs. 47, line 23 through pg. 52, line 8.

In any event, such after acquired evidence defense would have no application to the events and damages occurring with respect to Parker from October 27, 2014 when he first reported his disability and asked for an accommodation (transfer) until


4242 N. 19th Ave.
Suite 150
Phoenix, AZ 85015
(602) 882-5417

the date of discovery by the Defendants (which never in fact occurred because there never was any misconduct or misrepresentation which would have formed the factual basis for such defense).

### 6. Conclusion

Based upon the foregoing (1) facts presented in the light most favorable to Plaintiff Parker, (2) the DSOFs that have been disputed, (3) the legal arguments presented herein, Parker respectfully requests an order denying the DMSJ.

Respectfully submitted on this 23rd day of December, 2018.

        *s/Aaron S. Ludwig*
        Attorney for Plaintiff

This Response shall be filed on the date above pursuant to the U.S. District Court for Arizona Electronic Case Filing Administrative Policies and Procedures Manual,

by: /s/ Aaron S. Ludwig
    Aaron S. Ludwig



4242 N. 19th Ave.
Suite 150
Phoenix, AZ 85015
(602) 882-5417